HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

University Insurance, LLC,

        Plaintiff,

    v.

Allstate Insurance Company,

        Defendant.

Case No.  2:20-cv-01743-RAJ

ORDER GRANTING MOTION TO DISMISS

## I.   INTRODUCTION

This matter comes before the Court on Defendant's Motion to Dismiss (Dkt. # 5). Having considered the submissions of the parties, the relevant portions of the record, and the applicable law, the Court finds that oral argument is unnecessary.  For the reasons below, the motion is **GRANTED**.

## II.   BACKGROUND

Plaintiff University Insurance LLC ("University") is a limited liability company; its members are shareholders and officers of automobile dealerships in Seattle, Washington.  Dkt. # 1-2 ¶¶ 1, 3.  Among other products and services, the dealerships sell new Volkswagen and Audi vehicles.  *Id.* ¶ 3.

In 2015, Defendant Allstate Insurance Company ("Allstate") approached University's members, asking if they would promote or sell Allstate's insurance policies

ORDER – 1

to the dealerships' customers. *Id.* ¶ 4. The members agreed and formed University Insurance LLC "to operate as an insurance agency" within the dealerships. *Id.* ¶ 6. To that end, University and Allstate entered the Allstate R3001C Exclusive Agency Agreement ("Agency Agreement"). *Id.* Under the Agency Agreement, University, as an independent contractor, was responsible for referring customers to Allstate and "assisting Allstate in servicing Allstate insureds' claims." *Id.* ¶ 7.

Years later, on April 21, 2020, Allstate terminated the Agency Agreement "without prior notice or opportunity to cure." *Id.* ¶ 12. Under the agreement, Allstate needed "cause" to terminate the contract in that manner. *See id.* ¶¶ 8, 12. Allstate stated that it terminated the Agency Agreement because University violated a provision within it. *Id.* ¶ 23. University alleges that the provision it violated is void under Washington law. *Id.* ¶¶ 14-15. Because the provision is void, University alleges that Allstate lacked cause when it terminated the Agency Agreement and thus breached the agreement by terminating the contract as it did. *Id.* ¶ 16.

On October 19, 2020, University sued Allstate in state court. Dkt. # 1-2. Allstate later removed to this Court and moved to dismiss the complaint. Dkt. ## 1, 5. Allstate's motion to dismiss is now ripe and pending before the Court.

## III.  LEGAL STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court may dismiss a complaint for failure to state a claim. The court must assume the truth of the complaint's factual allegations and credit all reasonable inferences arising from those allegations. *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007). The court "need not accept as true conclusory allegations that are contradicted by documents referred to in the complaint." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Instead, the plaintiff must point to factual allegations that "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 568 (2007). If the plaintiff succeeds, the complaint avoids dismissal if there is "any set of facts

ORDER – 2

consistent with the allegations in the complaint" that would entitle the plaintiff to relief. *Id*. at 563; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

On a motion to dismiss, a court typically considers only the contents of the complaint. However, a court is permitted to take judicial notice of facts that are incorporated by reference in the complaint. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("A court may . . . consider certain materials documents attached to the complaint, documents incorporated by reference in the complaint."); *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988) ("[I]t is proper for the district court to 'take judicial notice of matters of public record outside the pleadings' and consider them for purposes of the motion to dismiss.") (quoting *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986)).

## IV.  DISCUSSION

University is suing Allstate for breach of the Agency Agreement. Dkt. # 1-2 ¶ 16. Allstate moves to dismiss that claim. Dkt. # 5. Before turning to the parties' arguments, the Court first addresses the parties' use of footnotes and the incorporation-by-reference doctrine.

### A.    Footnotes

The parties should rethink their use of footnotes. The Court strongly disfavors footnoted legal citations, which serve as an end-run around page limits and formatting requirements dictated by the Local Rules. *See* Local Rules W.D. Wash. LCR 7(e). Moreover, several courts have observed that "citations are highly relevant in a legal brief" and including them in footnotes "makes brief-reading difficult." *Wichansky v. Zowine*, No. CV-13-01208-PHX-DGC, 2014 WL 289924, at *1 n.1 (D. Ariz. Jan. 24, 2014). The Court strongly discourages the parties from footnoting their legal citations in any future submissions. *See Kano v. Nat'l Consumer Co-op Bank*, 22 F.3d 899-900 (9th Cir. 1994).

ORDER – 3

1

2   **B.      Incorporation by Reference**

3         In ruling on a Rule 12(b)(6) motion, a court may not consider any material beyond

4   the pleadings.  *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).  But it may

5   consider certain materials, such as documents incorporated by reference into a complaint,

6   without converting a motion to dismiss into a motion for summary judgment.  *Ritchie*,

7   342 F.3d at 907.

8         Though it asserts a breach of contract claim, University does not attach the

9   Agency Agreement to its complaint.  *See* Dkt. # 1-2.  Allstate, however, attaches the

10  agreement to its motion to dismiss and asks that the Court consider it when ruling on the

11  motion.  Dkt. # 5 at 2 n.1; Dkt. # 7.  University does not oppose that request and indeed

12  cites the Agency Agreement itself in its response to Allstate's motion to dismiss.  *See*

13  Dkt. # 12 at 4-5.  Because University's complaint "refers extensively" to the Agency

14  Agreement, and because the agreement "forms the basis of" University's claim, the Court

15  considers the Agency Agreement because it is incorporated by reference into the

16  complaint.  *Ritchie*, 342 F.3d at 908.  For purposes of this order, the Court need not

17  consider any other extrinsic evidence.

18  **C.      Breach of Contract**

19        To plead a breach of contract claim under Washington law, a plaintiff must allege

20  "that a valid agreement existed between the parties, the agreement was breached, and the

21  plaintiff was damaged."  *Univ. of Washington v. Gov't Emps. Ins. Co.*, 404 P.3d 559, 566

22  (Wash. Ct. App. 2017).

23        There is no dispute that the Agency Agreement was a valid agreement between the

24  parties.  Dkt. # 7 at 4-20.  At issue here is whether Allstate breached that agreement.

25        According to University, the Agency Agreement set forth the ways that the parties

26  could terminate the contract.  Dkt. # 1-2 ¶ 8.  One way was if Allstate had "cause," for

27  example, if University breached the agreement.  *Id.*; Dkt. # 7 at 13.  Allstate believed that

28  University did just that.  Dkt. # 1-2 ¶¶ 12-13.  It believed that University breached a

ORDER – 4

contractual provision preventing University from "refer[ring] a prospect to another company, agent, or broker," without Allstate's prior approval. *Id.*; Dkt. # 7 at 5.  Because Allstate believed that University breached this provision, it unilaterally terminated the Agency Agreement for cause.  Dkt. # 1-2 ¶¶ 12-13.

For its part, University concedes that it violated the referral provision. *Id.* ¶ 14. But it argues that the provision was void under a Washington statute, RCW 49.62.030. *Id.* ¶ 15.  Because the provision was void, University alleges that Allstate had no cause to terminate the Agency Agreement in the first place. *Id.* ¶ 16.

Thus, the question before the Court is whether the referral provision that University violated is indeed void under Washington law.  If so, then Allstate would have lacked cause when it terminated the agreement, and University states a plausible breach of contract claim.  If not, then Allstate would have had cause, and University's contract claim fails.

### i.   Noncompetition Covenants and the Referral Provision

Under Washington law, a "noncompetition covenant" is "void and unenforceable" against an independent contractor."  RCW 49.62.030.  The statute defines "noncompetition covenant" as "every written or oral covenant, agreement, or contract by which an employee or independent contractor is prohibited or restrained from engaging in a lawful profession, trade, or business of any kind."  RCW 49.62.010(4).  When passing the statute, the state legislature explained that "workforce mobility is important to economic growth and development" and that "agreements limiting competition or hiring may be contracts of adhesion that may be unreasonable."  RCW 49.62.005.

The Agency Agreement here contains a provision, Section I.E, limiting University's ability to refer prospective customers to another insurer.  Dkt. # 7 at 5.  In its entirety, Section I.E provides:

> Agency will not, either directly or indirectly, solicit, sell, or service insurance of any kind for any other company, agent, or broker, *or refer a prospect to another company, agent, or broker, without the prior written*

ORDER – 5

*approval of the Company*. Agency may, however, write applications for insurance under an assigned risk, cooperative industry, or government established residual market plan or facility in accordance with the Company's rules and procedures.

*Id.* (emphasis added).

The parties use different terms to characterize Section I.E.  University calls it the "noncompetition covenant," while Allstate calls it the "non-solicitation provision."  Dkt. # 5 at 2; Dkt. # 12 at 5.  Both "noncompetition covenants" and "non-solicitation agreements" are defined by statute.  Careful to avoid terms of art, the Court refers to Section I.E as the "Referral Provision."

The Court is presented with a single question: is the Referral Provision a "noncompetition covenant" under RCW 49.62.010(4) and thereby void under RCW 49.62.030?

### ii.    Statutory Interpretation

Based on the Court's research, no court has yet interpreted RCW 49.62.010's definition of "noncompetition covenant."

A court interpreting a state statute as a matter of first impression must "determine what meaning the state's highest court would give to the law."  *Brunozzi v. Cable Commc'ns, Inc.*, 851 F.3d 990, 998 (9th Cir. 2017) (quoting *Bass v. Cty. of Butte*, 458 F.3d 978, 981 (9th Cir. 2006)).  To do so, the court "follow[s] the state's rules of statutory interpretation."  *Id.*

When interpreting statutes, the court's "fundamental objective" is to "ascertain and carry out the Legislature's intent, and if the statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent."  *Thurston Cty. ex rel. Snaza v. City of Olympia*, 440 P.3d 988, 991 (Wash. 2019) (quoting *Dep't of Ecology v. Campbell & Gwinn, LLC*, 43 P.3d 4, 9-10 (Wash. 2002)).  The court derives legislative intent "solely from the plain language of the statute, considering the text of the provision, the context of the statute, related provisions,

ORDER – 6

amendments to the provision, and the statutory scheme as a whole." *First Student, Inc. v. Dep't of Revenue*, 451 P.3d 1094, 1096 (Wash. 2019).  If the plain meaning of a statute is "unambiguous," the court ends its inquiry.  *Matter of Dependency of E.M.*, 484 P.3d 461, 465 (Wash. 2021).  Only when a statute is "ambiguous"—that is, the statute's language "remains susceptible to more than one reasonable meaning"—will the court resort to "aids of statutory construction and legislative history." *Id.* (quoting *Campbell & Gwinn*, 43 P.3d at 10).

To resolve this matter, both parties claim that the Court need only look to RCW 49.62.010's "plain meaning."  Dkt. # 5 at 6; Dkt. # 12 at 7.  The Court agrees.  The statute is unambiguous, and the Court need not consult legislative history or statutory aids.  The Court derives legislative intent from the statute's plain meaning and ends its inquiry there.

Allstate argues that the Referral Provision is not a noncompetition covenant.  It asks the Court to look at the noncompetition law's purpose.  Dkt. # 5 at 6-9.  According to Allstate, the purpose of the law is to curb both restraints on "workforce mobility" and limits on "competition" and "hiring." *Id.* at 6.  The Referral Provision here, it says, does not concern either. *Id.* at 7.  Rather, the Referral Provision simply limits University's ability to refer prospective customers to a competing insurer while it is working with Allstate.  Dkt. # 13 at 2-6.  Because the provision does not prohibit or restrain University's workforce mobility, Allstate argues that it does not prohibit or restrain it from "engaging" in its "profession, trade, or business," and thus the provision is outside the statute's purview. *Id.*

University disagrees.  Given that the statute voids "every" covenant restraining an independent contractor from engaging in a business, it says that the statute necessarily voids "all types and kinds of restrictive covenants" on an independent contractor.  Dkt. # 12 at 8.  University suggests that, because the Referral Provision is a restraint on its business, the section must therefore be a noncompetition covenant and void. *Id.*

ORDER – 7

Applying Washington's rules of statutory interpretation, the Court finds Allstate's arguments more convincing:  The Referral Provision is not a "noncompetition covenant" as defined by RCW 49.62.010.

To start, the Court narrows what portions of RCW 49.62.010 it need interpret. Here, it is undisputed that the Referral Provision is a "written" "covenant, agreement, or contract" and that University is an "independent contractor."  RCW 49.62.010(4); *see also* Dkt. # 7 at 5.  Also undisputed is that University conducts an "insurance agency business" and hence is engaged in a "profession, trade, or business" of some kind.  RCW 49.62.010(4); *see also* Dkt. # 1-2 ¶¶ 10-11.  But the parties disagree about what it means for an independent contractor to be "prohibited or restrained" from "engaging in" their profession, trade, or business.

The statute does not define "prohibit[ion]" or "restrain[t]," so the Court consults the dictionary.  *State v. Sullivan*, 19 P.3d 1012, 1019 (Wash. 2001) ("In the absence of a statutory definition, we will give the term its plain and ordinary meaning ascertained from a standard dictionary." (footnotes omitted)).  "Prohibition" is "the act of prohibiting by authority" or an "order to restrain or stop."  Prohibition, Merriam-Webster, https://www.merriam-webster.com/dictionary/prohibition (last visited Sept. 29, 2021). To prohibit is "to prevent from doing something" or "to forbid."  Prohibit, Merriam-Webster, https://www.merriam-webster.com/dictionary/prohibiting (last visited Sept. 29, 2021).

The Referral Provision does not entirely prohibit or forbid University from operating its insurance agency business.  Neither party argues that it does.  It merely limits or restrains some of University's business practices while working with Allstate. Thus, if University receives any relief under the noncompetition statute at all, it must be because the Referral Provision constitutes a "restraint."

"Restraint" is the "act of restraining."  Restraint, Merriam-Webster, https://www.merriam-webster.com/dictionary/restraint (last visited Sept. 29, 2021).  To

ORDER – 8

restrain is "to limit, restrict, or keep under control" or "to moderate or limit the force, effect, development, or full exercise of." Restrain, Merriam-Webster, https://www.merriam-webster.com/dictionary/restraining (last visited Sept. 29, 2021).

Turning to the parties' arguments, the Court concludes that a "noncompetition covenant" does not include—literally—every "restraint" on an independent contractor's business. University asks the Court to adopt a literal reading of the word "restraint." It suggests that a restraint constitutes any limitation on its insurance agency business: it thus applies to "all types and kinds of restrictive covenants." Dkt. # 12 at 8. The Court will not adopt that reading for it ignores several principles of statutory interpretation.

First, courts "avoid literal reading of a statute which would result in unlikely, absurd, or strained consequences." *Fraternal Ord. of Eagles, Tenino Aerie No. 564 v. Grand Aerie of Fraternal Ord. of Eagles*, 59 P.3d 655, 663 (Wash. 2002). Taking the word "restraint" and reducing it to its most generic definition, "limit," as University would have it, leads to absurd consequences. That interpretation would call into question any contractual provision between an employer and an independent contractor.

Almost any contractual provision could be characterized as a literal "limit" on one's business. A dress code? That may impose a cost on an independent contractor, thereby decreasing its profit and placing a "limit" on its business. A requirement to use certain materials or perform certain tasks? That may also impose additional costs. It may also require an independent contractor to perform a task in a way the contractor would not have but for the contractual duty, hence imposing a limit. Or, as Allstate postulates, an assignment provision for inventions made on a company's dime? Dkt. # 13 at 5. That may limit an independent contractor's business because it would prevent the contractor from selling for himself the invention that he made for the company's benefit. All examples, though literally "limits" on one's business, are far afield from any statutory purpose, and all demonstrate the absurd consequences that may result from a literal reading.

ORDER – 9

Nothing in the statute suggests that it is aimed at all covenants, regardless of type. If the legislature truly wished to drag all covenants into this statute's sweep, the Court believes it would have said so. *See Wright v. Jeckle*, 144 P.3d 301, 305 (Wash. 2006) ("If the legislature contemplated such a[n absurd] result, we believe it would have spoken up by now.").

Second, courts do not "read words in isolation"; they "read words within the context of the whole statute and larger statutory scheme." *City of Auburn v. Gauntt*, 274 P.3d 1033, 1037 (Wash. 2012). What is more, "[s]tatutes must be interpreted and construed so that all the language used is given effect, with no portion rendered meaningless or superfluous." *Associated Press v. Washington State Legislature*, 454 P.3d 93, 96 (Wash. 2019) (quoting *Whatcom County v. City of Bellingham*, 909 P.2d 1303 (Wash. 1996)).

Besides being too literal, University's interpretation reads the word "restraint" in isolation. Again, University believes that "restraint" includes "all types and kinds of restrictive covenants." Dkt. # 12 at 8. That reading is not only illogical, but it also leaves certain words in the statute meaningless.

RCW 49.62.010(4) defines "noncompetition covenant" as "every written or oral covenant, agreement, or contract by which an employee or independent contractor is prohibited or restrained from engaging in a lawful profession, trade, or business of any kind." The statute, by its own terms, applies to a *specific type* of covenant: *noncompetition* covenants. Yet University says it applies to all covenants, regardless of type. How a *specific type* of covenant could include *all types* of covenants is perplexing. Logic aside, if noncompetition covenants indeed included "all types and kinds" of covenants, then the word "noncompetition" in the statute becomes entirely meaningless or surplusage, violating a principle of statutory interpretation.

In sum, University's literal, isolated reading of RCW 49.62.010 is unpersuasive and unreasonable. A better reading considers the statutory scheme as a whole and effects

ORDER – 10

1   the state legislature's intent.

2          The Court holds that RCW 49.62.010 prohibits only certain types of "restraints,"

3   namely those that restrain independent contractors' "workplace mobility" or those that

4   limit their "competition or hiring": that is what it means to impermissibly limit their

5   ability to "engage in" their profession, trade, or business.

6          To determine the plain meaning of RCW 49.62.010, the Court must not look to

7   that section alone.  It must carry out legislative intent by looking to "related statutes [that]

8   disclose legislative intent about the provision in question."  *State, Dep't of Ecology v.*

9   *Campbell & Gwinn, L.L.C.*, 43 P.3d 4, 10 (Wash. 2002).  RCW 49.62.005, the chapter's

10  "Findings," reveal the legislature's intent.  *See State v. Shawn P.*, 859 P.2d 1220, 1224

11  (Wash. 1993) ("The purpose of this legislation is stated in the following legislative

12  finding . . . ."); *Gauntt*, 274 P.3d at 1037 (explaining that chapter 3.50 RCW's "explicit

13  purpose" is expressed in RCW 3.50.005, the chapter's "Legislative finding").

14         The purpose of the noncompetition chapter is to promote "workforce mobility"

15  and to curb "agreements limiting competition or hiring."  RCW 49.62.005.  Thus, given

16  the legislature's intent, the "restraints" targeted by the noncompetition statute are

17  generally those that stifle "workforce mobility" or "competition" and "hiring."

18         This interpretation succeeds everywhere that University's interpretation fails.  It

19  does not give "restraint" its literal meaning, avoiding absurd consequences.  Dress codes,

20  and other abstract "limits" on business, would likely be out of the statute's crosshairs.

21  They conceivably have no bearing on one's workforce mobility or ability to be hired

22  elsewhere.  Further, this interpretation gives meaning to all words in the statute—a

23  "noncompetition covenant" would no longer simply mean "all covenants," preserving the

24  meaning of the word "noncompetition."  Finally, and perhaps most important, it does not

25  ignore the legislature's express intent.

26         Applying that interpretation to the Referral Provision here, the Court holds that the

27  provision is not a "noncompetition covenant" under RCW 49.62.010.  The Referral

28  ORDER – 11

Provision does not "restrain" University's "workplace mobility" or "hiring." The Court struggles to see how University, a limited liability corporation, could be hired or fired or how it could move from one workplace to another in the first place. Even if it could, the Referral Provision by its own terms does not limit University's workforce mobility. It merely limits whose insurance policies University may promote while it is working with Allstate. It does not limit University's workforce mobility by, for example, restraining University's ability to work with a future employer. Thus, University is free to "engage in" its insurance agency business. RCW 49.62.010. Because it does not restrain University's workforce mobility, the Referral Provision is not a "noncompetition covenant" under RCW 49.62.010 and is not void under RCW 49.62.030.

As explained above, the question before the Court is not whether University violated the Referral Provision. That much is undisputed. Dkt. # 1-2 ¶ 14. Its own complaint alleges that University violated the provision by "refer[ing] some of their customers to insurers other than Allstate." *Id.* Instead, the question is whether the Referral Provision is itself void under Washington's noncompetition laws. The Court holds that it is not. Thus, given University's violation, it is undisputed that Allstate had cause to terminate the Agency Agreement, and the Court grants Allstate's motion to dismiss. *Id.* ¶ 8; Dkt. # 7 at 13.

### iii. Miscellaneous Issues

For clarity, the Court addresses two additional issues raised in the motion. First, University emphasizes that it earned less than $250,000 a year from Allstate. Dkt. # 12 at 2. This is irrelevant. RCW 49.62.030 voids noncompetition covenants with an independent contractor "unless the independent contractor's earnings from the party seeking enforcement exceed two hundred fifty thousand dollars per year." University alleges that it earned less than $250,000 a year, presumably to show that this statutory exception does not apply. *See* Dkt. # 1-2 ¶ 15. But given the Court's conclusion that the Referral Provision is not a "noncompetition covenant," the statute, at

ORDER – 12

bottom, is inapplicable, and University's earnings are irrelevant.

Second, throughout its motion, Allstate refers to the Referral Provision as a "non-solicitation provision." *See* Dkt. # 5 at 7.  But "nonsolicitation agreement" has a statutory definition that does not apply here.  The definition of "noncompetition covenant" expressly excludes "nonsolicitation agreements."  RCW 49.62.010(4).  Nonsolicitation agreements are those "between an *employer and employee* that prohibits solicitation by an employee, *upon termination of employment*: (a) Of any employee of the employer to leave the employer; or (b) of any customer of the employer to cease or reduce the extent to which it is doing business with the employer."  RCW 49.62.010(5) (emphasis added).  That definition is plainly inapplicable here, not least because University was not Allstate's "employee" and because the Referral Provision did not apply only "upon termination of employment."  University was an independent contractor, and the Referral Provision applied during University's employment with Allstate. Dkt. # 7 at 5.  Thus, despite Allstate's label, the Referral Provision is not a "nonsolicitation agreement" and is not expressly exempt from Washington's noncompetition law.  *See* Dkt. # 12 at 9-10.

### D.    Leave to Amend

A court may deny a plaintiff leave to amend if "allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency."  *Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010) (quoting *Schreiber Distrib. Co. v. Serv–Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).  "Leave to amend is warranted if the deficiencies can be cured with additional allegations that are 'consistent with the challenged pleading' and that do not contradict the allegations in the original complaint."  *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011) (quoting *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296-97 (9th Cir. 1990)).

Amendment may be futile here.  University alleges that the Agency Agreement permitted Allstate to unilaterally terminate the agreement if it had "cause." Dkt. # 1-2 ¶ 8.  Cause undoubtedly included breach of the Agency Agreement. Dkt. # 7 at 13.

ORDER – 13

University concedes that it violated the Referral Provision.  Dkt. # 1-2 ¶ 4.  Its entire breach theory rested on its claim that the Referral Provision was void under Washington' noncompetition statute.  *Id.* ¶¶ 15-16.  The Court has now rejected that theory as a matter of law.  Based on the allegations in the complaint, it seems clear that Allstate had cause to terminate the Agency Agreement.  Whether this deficiency can be cured by amendment is doubtful.  But "[t]he standard for granting leave to amend is generous." *Corinthian Colleges*, 655 F.3d at 995 (quoting *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 701 (9th Cir. 1990)).  And the Court cannot say for sure that the additional, consistent allegations could not cure the complaint.  Given that uncertainty, the Court cannot conclude at this stage that amendment would be futile and grants University leave to amend.

## V.   CONCLUSION

For the reasons stated above, the Court **GRANTS** Allstate's Motion to Dismiss (Dkt. # 5).  The Court grants University leave to file an amended complaint **within 21 days** of the entry of this Order.

DATED this 29th day of September, 2021.

The Honorable Richard A. Jones
United States District Judge

ORDER – 14